UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

MIKE McCARTHY,             )
                                       )
         Plaintiff,          )
                                       )
v.                            )     No.:  3:14-CV-472-TAV-HBG
                                       )
G.UB.MK CONSTRUCTORS and    )
JACOBS ENGINEERING GROUP, INC.,  )
                                       )
         Defendants.       )

## MEMORANDUM OPINION

This civil action is before the Court on defendant G.UB.MK Constructors' ("GUBMK") Motion to Dismiss for Failure to State a Claim and/or Motion for Summary Judgment [Doc. 58], plaintiff's Motion for Leave of Court to File Amended Complaint [Doc. 68], defendant Jacobs Engineering Group, Inc.'s ("Jacobs") Motion for Summary Judgment Based on Government Contractor Qualified Immunity and the First Filed Doctrine [Doc. 75],[1] and Jacobs's Motion for Summary Judgment [Doc. 94]. The parties filed several responses and replies in support of, and in opposition to, the motions before the Court [Docs. 71–73, 78, 123–24, 126–28, 130–31, 134].

For the reasons discussed herein, the Court will deny plaintiff's Motion for Leave of Court to File Amended Complaint [Doc. 68], grant Jacobs's Motion for Summary

---

[1] The Court notes Jacobs's first motion for summary judgment was initially a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. 75]. On September 8, 2016, the Court granted plaintiff and Jacobs's request to convert the motion to dismiss to a motion for summary judgment [Doc. 109]. As such, the Court will apply the standards of Federal Rule of Civil Procedure 56 in its analysis of Jacobs's converted motion for summary judgment [Doc. 75].

Judgment [Doc. 94], grant GUBMK's Motion to Dismiss for Failure to State a Claim and/or Motion for Summary Judgment [Doc. 58], and deny as moot Jacobs's Motion for Summary Judgment Based on Government Contractor Qualified Immunity and the First Filed Doctrine [Doc. 75].

## I.    Background

This action relates to plaintiff's participation in the post-spill clean-up removal and recovery of fly ash at the Tennessee Valley Authority ("TVA") Kingston Fossil Fuel Plant (the "KIF plant") following the coal ash spill that occurred when a containment dike at the KIF plant failed on December 22, 2008 (the "ash spill").

Plaintiff was an employee of GUBMK [Doc. 4-1 ¶ 4]. He asserts that while employed by GUBMK, he sustained a "progressive work-related occupational illness injury" and that he notified GUBMK of this injury allegedly resulting from his exposure to toxic substances [*Id.*]. Plaintiff provides that "as a result of his work-related complaint, he sought but did not receive medical treatment or protective equipment for his work" [*Id.* ¶ 5]. He claims that GUBMK discharged him in retaliation for reporting "work-related exposure and complaints about lack of worker protection for himself and all other workers" [*Id.* ¶ 6].

Plaintiff further states that GUBMK was acting upon the "coercive pressure" of Jacobs, a contractor on the site [*Id.* ¶ 10]. According to plaintiff, Jacobs did not want to alert the Roane County, Tennessee community and TVA as to the danger of the ash spill location in order to preserve its reputation and receive payment as the primary safety

2

contractor on site [*Id.*]. As such, plaintiff contends that Jacobs hid safety problems and put undue coercion on other subcontractors to do the same [*Id.* ¶ 12]. This coercion included having subcontractors, including GUBMK, ignore prescriptions for respirator protection, dusk masks, and other precautionary measures [*Id.* ¶ 13]. Plaintiff contends that one example of this behavior is when Chris Ike, an employee of Jacobs, threatened plaintiff with his job "by stating that he would be hanging himself with his own cock by wearing a dusk mask for safety after requesting said protective wear due to breathing problems and Jacobs denying the request" [*Id.* ¶ 11].

Plaintiff further states that defendants violated federal regulations by "failing to provide appropriate respiratory protection, manipulating air testing, and retaliating through potential interference with subcontract employee employers regarding those individuals that needed protection for human health" [*Id.* ¶ 15]. Plaintiff also contends that as a result of defendants' violations of state law, plaintiff "witnessed individuals working on [the] site continually ingesting harmful toxins becoming injured and dying" [*Id.* ¶ 16]. According to plaintiff, this conduct occurred "outside the scope of law and knowledge and permission" of the federal agencies involved [*Id.*].

Plaintiff's first amended complaint appears to assert the following claims against both defendants: (1) retaliatory discharge under Tennessee common law and the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304; (2) violations of federal Occupational Safety and Health Administration ("OSHA") regulations, 29 C.F.R. §§ 1910.1018, 126.103, and 1910.134(a)(2); (3) violations of Tennessee's

3

Occupational Safety and Health Act of 1972 ("TOSHA"), Tenn. Code Ann. §§ 50-3-2012,[2] 50-3-106, and 50-3-409; (4) Tennessee common law intentional/reckless infliction of emotional distress ("IIED"); and (5) Tennessee common law civil conspiracy [*Id.* ¶¶ 1–21].[3]

## II.     Standards of Review

Currently pending before the Court are GUBMK's motion to dismiss and/or motion for summary judgment [Doc. 58], plaintiff's motion to amend [Doc. 68], and Jacobs's two motions for summary judgment [Docs. 75, 94].  The Court will first discuss the standards of review applicable to each motion and will then turn to the merits of each motion.

### A.     Motion to Amend

Aside from the situations described in Federal Rule of Civil Procedure 15(a)(1), which do not apply here, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave," however, "when justice so requires."  *Id.*  Leave is appropriate "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the

---

[2]  Tenn. Code Ann. § 50-3-2012 was repealed by 2013 Pub. Acts, c. 257, § 2, eff. April 23, 2013.

[3]  The Court notes that it is somewhat unclear what claims plaintiff is asserting.  GUBMK and Jacobs have construed the complaint as asserting the claims as listed by the Court [*See* Docs. 58, 59, 94, 95].  Plaintiff has not argued that that defendants' interpretation of the complaint is incorrect.  As such, the Court construes the complaint as asserting the claims as listed.

4

amendment." *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 633 (6th Cir. 2009).

### B. Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure sets forth a liberal pleading standard. *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004). It requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557)).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In doing so, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476

5

(6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

### C. Motion for Summary Judgment

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). The plaintiff must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby,*

6

*Inc.*, 477 U.S. 242, 256 (1986). "[M]ere conclusory and unsupported allegations, rooted in speculation, do not meet that burden." *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (citation omitted). Summary judgment may not be defeated "based on rumors, conclusory allegations, or subjective beliefs." *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson*, 477 U.S. at 248. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Hein*, 232 F.3d at 488.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III.    Plaintiff's Motion to Amend

Although plaintiff filed its motion to amend after GUBMK filed its dispositive motion, granting a motion to dismiss or a motion for summary judgment before addressing a pending motion to amend can be an abuse of discretion. *See Thompson v. Superior Fireplace Co.*, 931 F.2d 372, 374 (6th Cir. 1991). As such, the Court first considers plaintiff's motion to amend and will then turn to defendants' dispositive motions.

In opposition to the motion to amend, GUBMK argues that: (1) the proposed amendments are futile; (2) plaintiff moved to amend the complaint with undue delay; (3) plaintiff proposes the amendments in bad faith; and (4) allowing the proposed amendments would unduly prejudice GUBMK. The Court first turns to whether the proposed amendments are futile.

"Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cty.*, 408 F.3d 803, 807 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)). When a motion to amend is filed in response to a motion for summary judgment, however, "the Court may properly look to the affidavits and other evidence in the record." *Powell v. Henry*, No. 05-CV-70435-DT, 2006 WL 2160896, at *1 (E.D. Mich. July 28, 2006). In this circumstance, "the Court cannot assess the proposed amended complaint as if that evidence does not exist." *Id.* (quoting *Smith v. Chrysler Corp.*, 938 F. Supp. 1406, 1414 (S.D. Ind. 1996)).

8

Consequently, in such a case, "the proposed amended complaint is futile under Rule 15(a) not only if it would fail to survive a motion to dismiss for failure to state a claim, but also if the amended pleading could not survive a previously filed motion for summary judgment." *Id.* (citing *Bauchman v. West High Sch.*, 132 F.3d 542, 561–62 (10th Cir. 1997); *Wilson v. Am. Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir. 1989)). As such, the Court will consider whether plaintiff's proposed claims would survive a Rule 12(b)(6) motion to dismiss, and whether the claims would survive GUBMK's previously filed motion for summary judgment [Doc. 58]. In doing so, the Court applies the standards of review pertaining to such motions.

Upon review of plaintiff's proposed second amended complaint, it appears that plaintiff is attempting to assert the same claims as set forth in his first amended complaint, except his proposed amended complaint includes additional allegations in support of those claims [*Compare* Doc. 4-1 *with* Doc. 68-1]. As with his first amended complaint, plaintiff's proposed second amended complaint asserts the following claims against both Jacobs and GUBMK: (1) retaliatory discharge under Tennessee common law and the TPPA; (2) violations of OSHA regulations; (3) violations of TOSHA; (4) IIED; and (5) civil conspiracy [Doc. 68-1]. The Court will address the futility of these claims in turn.

## A.     Retaliatory Discharge

Plaintiff's proposed second amended complaint provides that he was wrongfully discharged in retaliation for reporting work-related exposures, complaining about the lack

of available protective equipment, complaining about health problems, and for filing a lawsuit against Jacobs [*Id.* ¶¶ 8–9, 20]. Plaintiff brings his claims against defendants for retaliatory discharge under Tennessee common law and under the TPPA.

To prevail on a claim for retaliatory discharge under Tennessee common law, a plaintiff must show:

> (1) that an employment-at-will relationship existed; (2) that the employee was discharged; (3) the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy.

*Gager v. River Park Hosp.*, No. M2009-02165-COA-R3-CV, 2010 WL 4244351, at *4 (Tenn. Ct. App. Oct. 26, 2010). In order to satisfy the first element, that an employment at-will relationship existed, a plaintiff must establish that he was an employee of the entity sued. *Id.*

To prevail on a retaliatory discharge claim under the TPPA, a plaintiff must show that: (1) he was "an employee of the defendant"; (2) he "refused to participate in, or to remain silent about, illegal activities"; (3) his employer discharged him; and (4) there was "[a]n exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and the termination of his employment." *Id.* The Court will first consider the futility of plaintiff's proposed retaliatory discharge claims against Jacobs and will then turn to the proposed claims against GUBMK.

10

As to plaintiff's retaliatory discharge claims against Jacobs, the Court notes that plaintiff does not allege in his proposed second amended complaint that he was Jacobs's employee [*See* Doc. 68-1 ¶ 4 (providing that plaintiff was employed by GUBMK)]. Consequently, plaintiff does not sufficiently allege that he satisfies the first element of a retaliatory discharge claim under Tennessee common law or under the TPPA, which both require a showing that the plaintiff was the employee of the defendant. *See id.* Plaintiff's allegations, therefore, would not survive a motion to dismiss because they do not state a claim for plausible relief. Consequently, plaintiff's retaliatory discharge claims against Jacobs as alleged in his proposed second amended complaint are futile.

Turning to plaintiff's retaliatory discharge claims against GUBMK, GUBMK argues that plaintiff cannot establish the necessary elements of such claims because TVA, not GUBMK, made the decision to terminate plaintiff. GUBMK further asserts that TVA terminated plaintiff because TVA no longer needed plaintiff's services, not because plaintiff engaged in protected actions. Plaintiff, however, disputes these assertions.

In support of its argument, GUBMK cites to Gary MacDonald's testimony, who, at the time of plaintiff's termination, was the TVA Site Construction Services Manager for the KIF plant [Doc. 58-1 p. 1]. MacDonald provides that he made the decision to layoff plaintiff, along with thirty-four other staff augmented personnel, and that no one at GUBMK was involved in the decision to select plaintiff as part of the layoff [*Id.* at 1–2]. MacDonald asserts that the layoffs were part of a continuing reduction in the number of employees working at the site [*Id.*]. According to MacDonald, several segments of the

11

project were near completion, and there was no longer a need for so many employees, including plaintiff [*Id.*].  Furthermore, plaintiff admits that on November 27, 2013, TVA notified GUBMK that plaintiff was part of a reduction in force determined by the TVA manager MacDonald [Doc. 29 p. 2].

Plaintiff provides little evidence contrary to MacDonald's assertions regarding the circumstances surrounding plaintiff's termination.  In support of his claim, however, plaintiff cites to the following exchange during his deposition:

> Q.    What evidence do you have that GUBMK had any input in your layoff?
>
> A.    They hired me.  They pay me.  Why wouldn't they determine who goes, I mean.
>
> Q.    Okay.  Anything else?
>
> A.    Not at this time.  Let me say, they hire me, they pay me, they direct me. Okay [Doc. 131-1 p. 15].

Aside from plaintiff's general assumption that GUBMK must have been involved in the termination decision, plaintiff does not point to any specific evidence supporting his contention that GUBMK made the decision to fire him.  Additionally, plaintiff does not provide any evidence that the decision to terminate him was for any reason other than a reduction in force.

The Court does not find that plaintiff has presented evidence upon which a reasonable jury could conclude that GUBMK terminated him in retaliation for reporting work-related exposures, for complaining about the lack of available protective equipment, for complaining about health problems, or for filing a lawsuit against Jacobs.

12

Plaintiff merely assumes that GUBMK had some input in his termination, and this assumption does not constitute "concrete evidence from which a reasonable juror could return a verdict in his favor." *See Anderson*, 477 U.S. at 256. Furthermore, even if GUBMK did have some input in the decision, plaintiff has not provided any evidence that the termination decision was in retaliation for plaintiff reporting issues with exposure to toxic substances.

Because plaintiff has not presented any concrete evidence to refute MacDonald's assertion regarding the circumstances surrounding plaintiff's termination, plaintiff has not presented evidence that the reason for his discharge was that he engaged in protected actions. As such, plaintiff's proposed retaliatory discharge claims against GUBMK would not survive GUBMK's previously filed motion for summary judgment and, therefore, the claims are futile.

### B.    Violations of OSHA[4]

Plaintiff's proposed second amended complaint contains allegations that defendants violated employee-protection provisions of the federal OSHA regulations [Doc. 68-1 ¶¶ 17–18]. Specifically, plaintiff asserts that defendants violated regulations

---

[4] The Court notes that plaintiff may have included statements regarding defendants' alleged OSHA violations to support his other claims, rather than as independent claims. Because both defendants construe plaintiff's complaint as alleging independent OSHA claims, however, the Court engages in this analysis.

13

on respiratory protection, 29 C.F.R. §§ 1910.134(a)(2) and 1926.103,[5] and inorganic arsenic, 29 C.F.R. § 1910.1018.

To the extent that plaintiff is attempting to sue defendants for their alleged violations of these OSHA regulations, the Court finds that such claims would not withstand a motion to dismiss. The Sixth Circuit has determined that "there exists no private cause of action for an alleged OSHA violation." *Madigan v. Nabisco Brands, Inc.*, 46 F. App'x 329, 330 (6th Cir. 2002); *see also Glasco v. Vanderbilt Univ. Sch. of Law*, No. 3:05-0603, 2006 WL 2521609, at *3 (W.D. Tenn. Aug. 30, 2006) ("[T]here is no private cause of action for an alleged violation of OSHA."). In addition, if plaintiff is attempting to sustain a cause of action for retaliatory discharge under OSHA, the Court finds that such a claim would fail as a matter of law. *See Taylor v. Brighton Corp.*, 616 F.2d 256, 263 (6th Cir. 1980) (holding that there is no private right of action under OSHA whistleblower-protection provisions); *Akers v. Wal-Mart Stores, Inc.*, No. 4:10-CV-41, 2011 WL 826246, at *3–4 (E.D. Tenn. Mar. 3, 2011) ("The statute does not afford Plaintiff the right to file an independent cause of action . . . for retaliatory discharge . . . based on action take pursuant to the provisions of OSHA."). As such, the Court finds that any independent OSHA violation claims would not withstand a motion to dismiss and are futile.

---

[5] Plaintiff cites to 29 C.F.R. § 126.103; however, this regulation does not exist. The correct citation appears to be 29 C.F.R. § 1926.103.

## C.    Violations of TOSHA[6]

Plaintiff's proposed second amended complaint contains allegations that defendants violated whistleblower-protection provisions under the state TOSHA statute [Doc. 68-1 ¶ 19].  Specifically, plaintiff provides that he engaged in protected activity and was discharged, or otherwise discriminated against, in violation of Tenn. Code Ann. §§ 50-3-106 and 50-3-409.[7]

The Court also finds that plaintiff's alleged TOSHA claims would not withstand a motion to dismiss.  Similar to OSHA, TOSHA does not authorize plaintiff to bring a private cause of action based upon alleged violations of the statute.  *See* Tenn. Code Ann. §§ 50-3-106(7)–(8), 50-3-409(b)(1)–(2) (providing that claims for wrongful discharge must be submitted to the commissioner of labor and workforce development within thirty days and that, upon receipt of such a complaint, the commissioner will decide what actions are appropriate); *see also Coley v. Pennakem, LLC*, No. 09–2780–STA, 2010 WL 2197821, at *2–3 (W.D. Tenn. May 28, 2010) (dismissing a private cause of action for wrongful discharge based on alleged violations of the whistleblower-protection provisions of TOSHA); *Ellis v. Rexnord Indus.*, No. 3:06-CV-410, 2007 WL 2509689, at *4 (E.D. Tenn. Aug. 30, 2009); *McGhee v. Adesa Auctions Memphis*, No. 08-2457-STA-dkv, 2009 WL 649828, at *7 (W.D. Tenn. Mar. 12, 2009); *Boyd v. Edwards & Assocs.*,

---

[6]    Similar to the alleged OSHA violations, the Court notes that plaintiff may have included statements regarding defendants' alleged TOSHA violations to support his other claims, rather than as independent claims.  Because both defendants construe plaintiff's complaint as alleging independent TOSHA claims, however, the Court engages in this analysis.

[7]    Plaintiff also cites Tenn. Code Ann. § 50-3-2012, which was repealed by 2013 Pub. Acts, c. 257, § 2, eff. April 23, 2013.

15

309 S.W.3d 470, 471–72 (Tenn. Ct. App. 2009). As such, the Court finds that any independent TOSHA violation claims would not withstand a motion to dismiss and are futile.

### D. Intentional/Reckless Infliction of Emotional Distress

Plaintiff alleges in his proposed second amended complaint that defendants' conduct constitutes "intentional/reckless infliction of emotional distress" ("IIED") [Doc. 68-1 ¶ 23].

To be successful on a claim for IIED under Tennessee law, a plaintiff must demonstrate "that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012).

As to the third element, serious mental injury "occurs where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Id.* at 210 (internal quotation marks omitted). "'Unable to cope with the mental stress engendered' means that the plaintiff has demonstrated, by means of [certain factors] or other pertinent evidence, that he or she has suffered significant impairment in his or her daily life resulting from the defendant's extreme and outrageous conduct." *Id.* Those factors include: (1) evidence of physiological manifestations of emotional distress; (2) evidence of psychological manifestations of emotional distress; (3) evidence that plaintiff sought medical treatment;

16

(4) evidence regarding the duration and intensity of plaintiff's psychological symptoms; (4) other evidence that defendants' conduct caused plaintiff to suffer significant impairment in his daily functioning; and (6) in certain instances, the extreme and outrageous character of defendants' conduct is itself important evidence of serious mental injury. *Id.* at 209–10.

Upon review of plaintiff's proposed second amended complaint, the Court finds that plaintiff does not sufficiently allege a serious mental injury. Plaintiff's only allegation that could be construed as a mental injury is that he suffered "embarrassment and humiliation" as a result of defendants' action [Doc. 68-1 ¶ 10]. Plaintiff's proposed second amended complaint contains no allegations as to how this injury has resulted in a "significant impairment to his . . . daily life." *Id.* at 210. As such, the Court finds that plaintiff has not sufficiently alleged the third element of his IIED claims, and, therefore, plaintiff's claims for IIED as alleged in his proposed second amended complaint would not survive a motion to dismiss and are futile.

### E.  Civil Conspiracy

Lastly, plaintiff proposed second amendment asserts claims of civil conspiracy against both defendants [Doc. 68-1 ¶¶ 19, 22]. Under Tennessee law, a plaintiff pursuing a claim for civil conspiracy must show: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006) (citing

17

*Morgan v. Brush Wellman, Inc.*, 165 F. Supp. 2d 704, 720 (E.D. Tenn. 2001)).  In addition, "[c]onspiracy claims must be pled with some degree of specificity," and "[c]onclusory allegations . . . unsupported by material facts will not be sufficient to state such a claim."  *Id.*

Participation in a civil conspiracy is not, by itself, an actionable tort.  *Stanfill v. Hardney*, No. M2004-02768-COA-R3- CV, 2007 WL 2827498, at *7 (Tenn. Ct. App. Sept. 27, 2007).  It is a derivative claim, which requires the plaintiff to demonstrate that "an underlying predicate tort [was] allegedly committed pursuant to the conspiracy." *Aegis Sciences Corp. v. Zelenik*, No. M2012– 00898–COA–R3–CV, 2013 WL 175807, at *7 (Tenn. Ct. App. Jan. 16, 2013).  If the underlying tort is not actionable, the conspiracy claim must also fail.  *See Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007) (holding that a civil conspiracy claim "requires an underlying predicate tort allegedly committed pursuant to the conspiracy"); *Greene v. Brown & Williamson Tobacco Corp.*, 72 F. Supp. 2d 882, 887 (W.D. Tenn. 1999).

Plaintiff's proposed second amended complaint does not include sufficient factual allegations in support of his civil conspiracy claim to survive a motion to dismiss.  The proposed complaint states, in a conclusory manner, that Jacobs and GUBMK conspired to violate health and safety laws and to retaliate against those who reported such violations [*See* Doc. 68-1 ¶¶ 12, 19, 21–22].  Plaintiff's proposed complaint does not, however, contain any factual allegations to support that defendants had a "common design," engaged in "concerted action," or committed "an overt act in furtherance of the [alleged]

18

conspiracy that resulted in plaintiff's alleged "injur[ies]." *See Kincaid*, 221 S.W.3d at 38. In addition, as the Court has already determined that the other alleged claims in plaintiff's proposed amended complaint are futile, and because civil conspiracy is not, by itself, an actionable tort, plaintiff cannot sustain an independent claim for civil conspiracy. *See Stanfill*, 2007 WL 2827498, at *7. Consequently, the Court finds that plaintiff's proposed civil conspiracy claims would not survive a motion to dismiss and are futile.

Having found that all of plaintiff's claims in his proposed second amended complaint are futile, the Court will deny plaintiff leave to amend his complaint.

## IV.   Jacobs's Motions for Summary Judgment

The Court now turns to Jacobs's motions for summary judgment [Docs. 75, 94]. Jacobs moves for summary judgment on all of plaintiff's claims against it—(1) retaliatory discharge under Tennessee common law and the TPPA; (2) violations of OSHA regulations; (3) violations of TOSHA; (4) IIED; and (5) civil conspiracy.

In its initial motion for summary judgment, Jacobs asserts that it is entitled to summary judgment based on the alleged qualified immunity it possesses as a contractor providing services to the federal government and pursuant to the first-filed doctrine [Doc. 75]. In its second motion for summary judgment, Jacobs argues that it is entitled to summary judgment on each claim because plaintiff has not and cannot prove the elements of retaliatory discharge, IIED, or civil conspiracy, and because plaintiff is not authorized to bring a private right of action for alleged OSHA and TOSHA violations [Doc. 94]. Plaintiff did not respond to either motion for summary judgment within the time allotted

[*See* Doc. 109 p. 3 (providing that plaintiff had until October 28, 2016, to file responses to Docs. 75 and 94)].

On January 30, 2017, the Court ordered plaintiff to show cause why the Court should not grant Jacobs's motions for summary judgment [Doc. 121]. Plaintiff filed a response to the order to show cause [Doc. 123]. In plaintiff's response, however, he does not contest any aspect of Jacobs's first-filed doctrine arguments set forth in its first motion for summary judgment [Doc. 75] or any aspect of Jacobs's arguments in support of its second motion for summary judgment [Doc. 94]. Instead, plaintiff addressed only Jacobs's immunity arguments [*See* Docs. 123, 123-1]. The Court is mindful of plaintiff's failure to address the majority of Jacobs's arguments in favor of summary judgment as it analyzes Jacobs's motions. The Court will address each of plaintiff's claims against Jacobs in turn.

As to plaintiff's retaliatory discharge claims pursuant to the TPPA and Tennessee common law, plaintiff has not provided any evidence that Jacobs was plaintiff's employer. Consequently, plaintiff has failed to provide evidence upon which a reasonable jury could conclude that plaintiff has satisfied the first element of retaliatory discharge under the TPPA or Tennessee common law. *See Gager*, 2010 WL 4244351, at *4 (providing that the first element for retaliatory discharge under the TPPA and Tennessee common law is that the defendant is the plaintiff's employer). Furthermore, plaintiff has not provided any evidence that Jacobs was involved in the decision to

terminate plaintiff. Jacobs, therefore, is entitled to summary judgment as to plaintiff's retaliatory discharge claims.

Looking at plaintiff's claims for Jacobs's alleged violations of OSHA and TOSHA, as the Court has already discussed, there is no private right of action for such violations. *See Madigan*, 46 F. App'x at 330; *Coley*, 2010 WL 2197821, at *2–3. Consequently, Jacobs is entitled to summary judgment as to plaintiff's alleged OSHA and TOSHA claims.

Turning next to plaintiff's alleged claim against Jacobs for IIED, plaintiff has failed to allege, or provide any evidence to support, that he suffered a serious mental injury as a result of Jacobs's actions. Consequently, Jacobs is entitled to summary judgment as to plaintiff's IIED claim. *See Rogers*, 367 S.W.3d at 205 (providing that "serious mental injury" is an element of an IIED claim).

Lastly, looking at plaintiff's claim for civil conspiracy against Jacobs, plaintiff has not provided evidence to support that defendants had a "common design," engaged in "concerted action," or committed "an overt act in furtherance of the [alleged] conspiracy that resulted in plaintiff's alleged "injur[ies]." *See Kincaid*, 221 S.W.3d at 38. In addition, as the Court has already determined that plaintiff's other alleged claims against Jacobs are not actionable, and because civil conspiracy is not, by itself, an actionable tort, plaintiff cannot sustain an independent claim for civil conspiracy. *See Stanfill*, 2007 WL 2827498, at *7. Consequently, the Court finds that Jacobs is entitled to summary judgment as to plaintiff's civil conspiracy claim.

Having found that Jacobs is entitled to summary judgment based on the arguments set forth in its second motion for summary judgment [Doc. 94], the Court need not address whether Jacobs is entitled to judgment based on the first-filed doctrine or government contractor immunity. As such, the Court will grant Jacobs's second motion for summary judgment [*Id.*] and deny as moot Jacobs's first motion for summary judgment [Doc. 75].

## V. GUBMK's Motion to Dismiss for Failure to State a Claim and/or Motion for Summary Judgment[8]

GUBMK asserts that it is entitled to judgment as to each of plaintiff's claims. The Court will address the following claims in turn: (1) retaliatory discharge under Tennessee common law and the TPPA; (2) violations of OSHA regulations; (3) violations of TOSHA; (4) IIED; and (5) civil conspiracy.

As to plaintiff's retaliatory discharge claims against GUBMK, the Court already discussed in connection with plaintiff's motion to amend that plaintiff's retaliatory discharge claims against GUBMK would not survive GUBMK's motion for summary judgment. For the same reasons the Court previously discussed, the Court finds that GUBMK is entitled to judgment as a matter of law as to plaintiff's retaliatory discharge claims under Tennessee common law and the TPPA.

As to plaintiff's remaining claims against GUBMK—OSHA claims, TOSHA claims, IIED, and civil conspiracy—the Court finds that GUBMK is entitled to summary

---

[8] Plaintiff's filings in opposition to GUBMK's motion consist primarily of facts [*See* Docs. 72, 124, 131]. Plaintiff, however, cites very little law in his filings and makes no attempt at arguing how the asserted facts satisfy the required elements of his claims.

22

judgment as to these claims for the same reasons the Court has already discussed in connection with the same claims asserted against Jacobs.  Accordingly, the Court will grant GUBMK's dispositive motion as to all claims.

In its motion, GUBMK asserts that it is entitled to attorneys' fees and expenses pursuant to Tenn. Code Ann. § 50-1-304(e)(1) and (2) [Doc. 59 p. 22].  To the extent that GUBMK is seeking such relief, GUBMK should file a separate motion in support of that request.

## VI.    Conclusion

For the reasons discussed herein, the Court will **DENY** plaintiff's Motion for Leave of Court to File Amended Complaint [Doc. 68], **GRANT** Jacobs's Motion for Summary Judgment [Doc. 94], **GRANT** GUBMK's Motion to Dismiss for Failure to State a Claim and/or Motion for Summary Judgment [Doc. 58], and **DENY as moot** Jacobs's Motion for Summary Judgment Based on Government Contractor Qualified Immunity and the First Filed Doctrine [Doc. 75].  The Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE